### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL A. STALNAKER,** | ) | **CASE NO. 1:07CV-2204** |
| | ) | |
| **Petitioner,** | ) | **JUDGE DAN A. POLSTER** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **DAVID BOBBY, Warden[1]** | ) | |
| | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Michael A. Stalnaker, ("Stalnaker"), through counsel, challenges the

constitutionality of his conviction in the case of *State v. Michael A. Stalnaker,* Lake County

Common Pleas Case No. 03-0650.  He filed a Writ of Habeas Corpus (Doc. No. 1) pursuant to

28 U.S.C. § 2254 on July 23, 2007, with the United States District Court for the Northern

District of Ohio.  On September 28, 2007, Respondent filed his Answer/Return of Writ.  (Doc.

No. 5.)  Stalnaker filed a response on November 27, 2007.  (Doc. No. 8.)  This matter is before

the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail

below, it is recommended that Stalnaker's Petition be denied as to Ground One but conditionally

---

[1]     Bennie D. Kelly is the current Warden at Trumbull Correctional Institution and as
such is the proper respondent.

granted as to that part of Ground Two resting on a *Blakely v. Washington*, 542 U.S. 296 (2004)

claim that he was improperly sentenced to "non-minimum" prison terms.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Stalnaker's conviction as follows:

> Appellant, Michael A. Stalnaker, appeals from the judgments of the Lake County
> Court of Common Pleas, denying his motion to suppress; convicting him of rape,
> gross sexual imposition, and furnishing alcohol to minors; and sentencing him to
> an aggregate prison term of thirty-three years. For the reasons that follow, we
> affirm.

> Appellant was indicted by the Lake County Grand Jury on the following counts:
> (1) five counts of rape, each a first degree felony in violation of R.C.
> 2907.02(A)(1)(b); (2) six counts of gross sexual imposition, each a third degree
> felony in violation of R.C. 2907.05(A)(4); (3) one count of furnishing alcohol to a
> minor, a first degree misdemeanor in violation of R.C. 4301.69(C)(1) and
> 4301.99(C); and (4) five counts of furnishing alcohol to a minor, in violation of
> R.C. 4301.69(A) and 4301.99(I). At his arraignment, appellant pleaded not guilty
> to the foregoing charges.

> The following facts were revealed during trial. At the time the alleged sexual
> encounters occurred, appellant was forty years old and the victim was twelve
> years old. Appellant resided in Florida, but often traveled to Lake County, Ohio,
> to visit his family and children. The victim was friends with appellant's daughter.
> In mid-March 2003, the victim was visiting appellant's daughter. During the visit,
> the victim viewed appellant's instant messaging e-mail address on a computer.

> When she returned home, the victim began to instant message appellant.
> Appellant and the victim continued to instant message each other on a daily basis
> from mid-March until late June 2003. Transcripts of the instant messages
> established that appellant and the victim engaged in graphic sexual discussions
> and had professed their love to each other. Also, the victim had e-mailed
> appellant a picture of her genitals.

> In late June 2003, appellant began to contact the victim via phone. The victim

-2-

testified that the phone calls again included sexual discussions and appellant professing his love for her. She further testified that phone contact with appellant was on almost a daily basis from late June 2003 until the beginning of September 2003. Cellular phone records established that appellant spent over 1000 hours speaking with the victim.

Appellant and the victim first met in early July 2003, at the Mentor Civic Center. Approximately a week and a half later, appellant arranged a "pool party" at a hotel in Willoughby, Ohio, for his children and their friends. The victim attended the pool party. She testified that appellant had reserved two rooms at the hotel. Appellant was staying in one room, while his children and their friends were staying in the other room. The victim stated that appellant provided her and the other children with alcohol from his room.

Following the pool party, appellant engaged in various sexual encounters with the victim. The victim testified that in early August 2003, she met appellant close to her house at around 1:00 a.m. Appellant drove the victim in his van to a nearby Lake County rest stop. At the rest stop, appellant gave the victim some beer. The victim stated that appellant was lying down with her in the back of the van. She testified that while they both had clothes on, he began to rub his genitals against her genitals. Appellant then attempted to place his hands down her pants, but the victim stopped him. The victim stated that appellant dropped her off near her house at approximately 4:00 a.m.

On or about August 20, 2003, the victim saw appellant's van at a pool parking lot. When she approached him, he invited her into his van. Appellant proceeded to French kiss the victim and rub her vagina with his hand over her bathing suit.

The victim testified that shortly after the August 20, 2003 sexual encounter, she met appellant near her house at approximately 1:00 a.m. Appellant drove the victim back to the rest stop and they drank Jim Beam Coolers and beer. The victim removed her clothes, and appellant digitally penetrated her vagina and performed cunnilingus on the victim. Appellant then removed his clothes and began to rub his penis against the victim's vagina. The victim testified that at one point she felt appellant's penis penetrate her vaginal cavity, but appellant did not ejaculate. Appellant was also fondling the victim's breasts. At some point, appellant and the victim put on their clothes and used the rest stop restroom. When they returned to the van, appellant again digitally penetrated the victim's vagina. Appellant then dropped the victim off near her house at approximately 4:00 a.m.

The victim stated that approximately a week later she met appellant near her house around 1:00 a.m. They drove to the rest stop and consumed beers. The victim removed her clothes and appellant digitally penetrated her vagina.

Appellant and the victim then used the rest stop restroom and returned to the van where appellant digitally penetrated the victim's vagina and fondled her breasts. He returned the victim to her house at approximately 4:00 a .m.

Appellant and the victim engaged in their final sexual encounter on September 4, 2003. The victim testified that appellant picked her up near her house at around 12:30 a.m. She stated that he proceeded to drive his van to the rest stop. At the rest stop, appellant and the victim drank green-melon wine. Appellant again digitally penetrated the victim's vagina and fondled her breasts. Appellant and the victim removed their clothes and he began to rub his penis against her vagina. On this occasion, appellant asked the victim if she would engage in sexual intercourse with him. The victim told appellant he would have to wait because she planned to have sex with him on his birthday. Appellant returned the victim near her home at approximately 5:30 a.m.

That morning, the victim's mother discovered the victim attempting to sneak back into the house. The victim's mother questioned her as to her whereabouts. Ultimately, the victim's mother suspected sexual abuse. As a result, she notified the police and took the victim to a hospital. At the hospital, a rape kit was administered. The doctor performing the rape kit testified that two fingernail sized lesions were detected within the victim's vaginal cavity.

Later that afternoon, the victim informed the police that she and appellant had engaged in numerous sexual encounters. The police asked the victim to initiate a "controlled" phone call to appellant. The victim consented and called appellant. A transcript of the recorded phone call corroborated the victim's allegations with respect to the September 4, 2003 sexual encounter and the ongoing sexual relationship between appellant and the victim.

In particular, appellant apologized repeatedly for scratching the inside of the victim's vagina with his fingernails. He further stated that he did not like the greenmelon wine consumed at the rest stop. Appellant and the victim also discussed their plan to have sexual intercourse on or near his birthday. Appellant stated that he had attempted to have sex with the victim previously, but she stopped him.

The victim provided additional testimony, on direct-examination, with respect to appellant's ongoing romantic relationship with a classmate. The victim testified that the relationship was contemporaneous with her sexual relationship with appellant. She also stated that appellant was involved in a romantic relationship with a second classmate before she met him. Appellant's defense counsel did not object to the foregoing testimony. Finally, the victim testified as to statements she made to a female friend and classmate in late August 2003, regarding her sexual relationship with appellant.

-4-

On cross-examination, appellant attempted to establish the victim's fabrication of the alleged sexual encounters. Specifically, appellant tried to demonstrate that the victim's allegations were a last ditch effort to keep appellant involved in her life and were also due to her jealousy of appellant's relationships with her classmates. Also, appellant attempted to show that the improper influences of the victim's mother, the police, and the child advocate resulted in the victim's allegations.

Introduced as evidence were appellant's cell phone record, and hotel/store receipts from outside Ohio, to demonstrate that on certain specific dates he was either not with the victim at the time of the alleged encounters or was not in Ohio. When presented with this evidence, the victim again stated that she could not remember the exact dates the sexual encounters occurred.

Appellant also opened the door to other bad acts by introducing evidence of his contemporaneous relationship with the victim's classmate. He attempted to use this evidence to demonstrate the victim had fabricated the alleged sexual encounters as she was jealous of appellant's relationship with the classmate and was attempting to get back at him.

 The victim's female friend provided testimony during the trial. Over appellant's objection, the female friend testified that the victim had stated she believed she was pregnant with appellant's child. The female friend further testified that the victim asked her how to abort the baby. Also, appellant's ex-wife testified that appellant often smoked marijuana with his children's friends and allowed, under his supervision, young boys and girls to sleep together. Appellant's defense counsel did not object to this testimony.

Appellant's testimony denied that he had had a sexual relationship with the victim. His testimony attempted to show that he was either not with the victim or was not in Ohio at the time of the alleged sexual encounters. With respect to the "controlled" phone call, appellant stated that he was merely playing along with what the victim was saying and that he had not engaged in a sexual encounter with the victim on that evening. He also testified that he did not provide any of the minors with alcohol at the July 17, 2003 pool party.

Following trial, the jury returned a unanimous guilty verdict on all counts. The court entered judgment accordingly, convicting appellant on all counts. After holding a sentencing hearing, the court sentenced appellant to an aggregate prison term of thirty-three years.

(Resp. Exh. 1.)

## II.  Procedural History

### A.  Conviction

On December 5, 2003, the Lake County Grand Jury charged Stalnaker with five counts of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(b), six counts of gross sexual imposition in violation of O.R.C. § 2907.05(A)(4), and six counts of furnishing alcohol to a minor in violation of O.R.C. § 4301.69(A) and § 4301.99(I).  (Resp. Exh. 2.)

Stalnaker, represented by counsel, pled "not guilty" and the matter proceeded to a jury trial whereat he was found guilty as charged.  On May 6, 2004, the trial court sentenced Stalnaker to an aggregate prison term of 33 years.  (Resp. Exh. 43, Tr. 1777-78, 1783.)

### B.  Direct Appeal

On June 15, 2004, Stalnaker, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eleventh Appellate District ("state appellate court") presenting seven assignments of error:

1. The trial court committed reversible error when it failed to suppress the "controlled" call between Appellant and [the victim.].
2. Appellant was denied the effective assistance of counsel, and was denied a fair trial in violation of the Ohio and United States Constitutions through the absence of objection to the introduction of inflammatory, prejudicial and irrelevant "bad act" evidence which was not admissible under Evidence Rule 404(B).
3. The trial court erred in denying Appellant's motion for a directed verdict of acquittal on that count of the indictment which alleged Appellant had provided alcohol to [the victim] at the pool party of July 17, 2003.
4. The trial court committed reversible error when over Appellant's objection it permitted [K.P.] to testify concerning hearsay statements allegedly made by [the victim.]
5. Appellant's sentence was imposed in violation of Appellant's constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution.
6. Each of the guilty verdicts herein were against the manifest weight of the evidence and, accordingly, in violation of Appellant's constitutional rights.
7. Appellant's convictions were based on insufficient evidence and, therefore, should be reversed.

(Resp. Exhs. 14, 16.)

On June 24, 2004, the U.S. Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004) finding a violation of the Sixth Amendment right to trial by jury where a Washington sentencing statute permitted a judge to impose a longer sentence after making certain findings of fact than would be allowed without such findings.

On December 29, 2005, the state appellate court affirmed Stalnaker's conviction.  (Resp. Exhs. 1, 19.)

On January 9, 2006, Stalnaker, through counsel, filed a motion for reconsideration pursuant to App.R. 26(A).  (Resp. Exh. 20.)  The state appellate court denied reconsideration on January 27, 2006.  (Resp. Exh. 24.)

Also, on January 9, 2006, Stalnaker, through counsel, filed a Notice to Certify Conflict with the Eleventh Appellate District as to his fifth assignment of error concerning his sentencing. (Resp. Exh. 21.)  Stalnaker raised two *Blakely* issues: 1) whether his sentence was unconstitutional under O.R.C. § 2929.14(B) as it was based on improper judicial fact findings which increased the sentence beyond the statutory minimum; and 2) whether the imposition of consecutive prison terms was unconstitutional.  The state appellate court found a conflict existed only as to the first issue and therefore certified the following question to the Ohio Supreme Court:  "Whether the judicial findings mandated under R.C. 2929.14(B) are unconstitutional in light of the United States Supreme Court's decision in *Blakely v. Washington* (2004), 542 U.S. 296."  (Resp. Exh. 25.)

While the certified question was pending before the Ohio Supreme Court, Stalnaker also filed, through counsel, a Notice of Appeal with the Supreme Court of Ohio on February 13,

-7-

2006, presenting two propositions of law:

1)      A criminal defendant is denied the effective assistance of counsel in violation of the Sixth Amendment when trial counsel engaged in a bizarre trial strategy that invited the introduction of "bad acts" evidence that tended to establish the accused's criminal propensity and in effect sealed the defendant's conviction.

2)      An appellant is denied his constitutional right to an open court under Article I, Section 16 of the Ohio Constitution when an appellate court fails to adequately consider and address each of the arguments submitted by the appellant in support of a claim of ineffective assistance of counsel.

(Resp. Exhs. 29, 30.)

On February 27, 2006, the Ohio Supreme Court decided *State v. Foster*, 109 Ohio St.3d 1 (2006), in which the Court applied *Blakely* to Ohio's sentencing statutes and found portions thereof to be unconstitutional including O.R.C. §§ 2929.14(B) and (E).

On April 26, 2006, the Supreme Court of Ohio determined that no conflict existed and also dismissed Stalnaker's appeal as not involving any substantial constitutional question.  (Resp. Exhs. 32, 33.)

C.    **Federal Habeas Petition**

On July 23, 2007, Stalnaker filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

GROUND ONE: Petitioner's trial counsel provided ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, by pursuing a bizarre trial strategy that invited the introduction of an avalanche of "bad acts" evidence that tended to establish the accused's criminal propensity and, in effect, sealed Petitioner's conviction.

GROUND TWO: Petitioner Michael Stalnaker was sentenced in violation of Petitioner's constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution based upon judicial findings which were not admitted by Petitioner or proved to the jury beyond a reasonable doubt, contrary to the rule announced by the United States Supreme Court in *Blakely v. Washington*.

-8-

(Doc. No. 1.)

### III.  Exhaustion and Procedural Default

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),(c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate

grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id*.  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

Furthermore, Ohio court have relied upon the doctrine of *res judicata* to dismiss constitutional claims that are raised for the first time in state post-conviction.  *State v. Perry*, 10 Ohio St.2d 175 (1967).  A determination in the Ohio courts that a claim is *res judicata* in a state

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

-10-

post-conviction petition amounts to a procedural default on a federal habeas corpus claim and requires a petitioner to show cause and prejudice for his default. *Norris v. Schotten*, 146 F.3d 314 (6th Cir. 1998); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Ewing v. McMackin*, 799 F.2d 1143, 1149-51 (6th Cir. 1986).

Respondent acknowledges that Ground One is exhausted but contends that Ground Two is unexhausted and thereby waived in habeas.

## IV. Analysis

### A.  Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).  Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at

-11-

1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

## B. Ground One

Stalnaker contends that he was denied effective assistance when his counsel allowed "bad acts" evidence to be admitted during trial.  Furthermore, Stalnaker claims that the state courts had not conducted a proper cumulative effects analysis.

Respondent argues that the state court adjudication was not an objectively unreasonable application of the Strickland standard and there was no due process violation.

### 1. State Court Analysis

-12-

The state appellate court concluded that Stalnaker was not denied effective assistance of counsel and stated:

> Under his second assignment of error, appellant argues that he was denied a fair trial due to ineffective assistance of counsel. In support of this argument, appellant cites to his defense counsel's failure to object to various instances of other bad acts evidence and defense counsel's failure to issue a motion in limine to reduce the amount of such evidence.
>
> * * *
>
> Appellant first contends that his defense counsel was ineffective because he opened the door for the introduction of other bad acts evidence, and failed to object to such evidence, regarding appellant's prior and contemporaneous relationships with the victim's classmates. Specifically, appellant argues that by opening the door and failing to object, his defense counsel allowed for multiple admissions of evidence as to his relationships with the victim's classmates.
>
> This portion of appellant's second assignment of error is not well-taken, as defense counsel's allowance of other bad acts evidence in this instance involved trial strategy. Specifically, one of appellant's trial strategies was clear-establish the victim as an imaginative twelve-year-old who was jealous of appellant's relationship with her classmates, thereby providing her an improper motive to fabricate the sexual encounters. To support this theory, evidence of appellant's contemporaneous and prior relationships with the victim's classmates was necessary.
>
> Moreover, evidence of appellant's contemporaneous relationship with a classmate was used by counsel in attempting to establish that appellant was not with the victim when the sexual encounters allegedly took place. In particular, defense counsel tried to demonstrate that appellant was talking with a classmate via phone when some of the sexual encounters allegedly occurred.
>
> Defense counsel's strategy was reiterated during closing argument. The closing argument again evaluated appellant's relationship with the victim's classmates to establish that the victim fabricated her allegations due to jealousy.
>
> Defense counsel's use of appellant's prior relationships with the victim's classmates clearly represented a questionable and risky trial strategy. However, "debatable strategic and tactical decisions will not form the basis of a claim for ineffective assistance of counsel, even if there had been a better strategy available. * * * In other words, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel." (Internal citations omitted.) Swick at 5-6.
>
> A reviewing court must refrain from second-guessing strategical decisions and

-13-

presume that counsel's performance falls within the wide range of reasonable legal assistance. *State v. Adkins*, 5th Dist. No. CA-906, 2002-Ohio-3942, at ¶ 20, citing *Strickland*. Accordingly, hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time of trial, as there are numerous strategies by which counsel can provide effective assistance of counsel in any given case. *Adkins* at ¶ 21, *citing Strickland*.

Although defense counsel's strategy allowed the prosecution to introduce evidence of other bad acts, clearly counsel believed this risk was outweighed by the advantage of establishing his defense theories. Due to the overwhelming amount of inculpatory evidence presented by the state, defense counsel was left with relatively few options. Accordingly, he attempted to establish his theories of a jealous, motivated victim, and that appellant was not with the victim when the sexual encounters allegedly occurred, via evidence of appellant's relationships with the victim's classmates.

Again, we must refrain from attempting to ascertain whether defense counsel's strategy was appropriate. We will not question counsel's implementation of this risky trial strategy, as such strategy falls within a wide range of reasonable legal assistance. Accordingly, appellant cannot claim that his defense counsel's strategy regarding the relationships with the victim's classmates resulted in ineffective assistance of counsel. This portion of appellant's second assignment of error is not well-taken.

* * *

Assuming defense counsel's failure to object to the testimony of appellant's ex-wife was error, such error did not prejudice appellant in light of all the properly admitted evidence. As will be established under our analysis of appellant's sixth and seventh assignments of error, there was substantial evidence which demonstrated an on-going sexual relationship between appellant and the victim. This evidence included testimonial evidence, countless instant messages between appellant and the victim, records of voluminous phone calls between appellant and the victim, the "controlled" phone call, and physical evidence of sexual abuse. Accordingly, counsel's failure to object to the *de minimus* testimony of appellant's ex-wife fails to establish that there existed a reasonable probability the results of the trial would have been different had an objection been made. This portion of appellant's second assignment of error is also not well-taken.

Based upon the foregoing analysis, appellant did not receive ineffective assistance of counsel. Specifically, defense counsel's opening the door for other bad acts evidence, and failure to object did not result in ineffective assistance of error. Thus, counsel's failure to file a motion in limine to limit the stated other bad acts evidence also did not result in ineffective assistance of counsel. Appellant's second assignment of error is without merit.

-14-

(Resp. Exh. 1, Paragraphs 46, 51-58, 62-63.)

While there was a dissent, the state court of appeals was unanimous on the issue of ineffective assistance of counsel.  Judge O'Neill wrote the following in his dissenting opinion:

> The evidence of guilt was overwhelming, yet capable of being disbelieved.  However, when weighed in the mire of "other acts" that was presented to this jury, the outcome was inevitable and resulted in a guilty verdict.  The majority is correct however, in ruling that we, as an appellate court, may not engage in second-guessing trial strategies, no matter how bizarre.  In fairness to all concerned, defense counsel made a valiant effort to create a defense, where none could be found.

*(Id*. at Paragraph 119.)

## 2.  Federal Standard

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that  trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all

-15-

significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

> The *Strickland* Court explained:
>
> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  *Cf. Engle v. Isaac*, 456 U.S. 107, 133-134 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . .

*Id*. at 689.   The *Strickland* Court also explained the prejudice prong of the test as follows:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.

Moreover, in determining whether prejudice has resulted from counsel's errors, a court "must consider the totality of the evidence before the jury . . . . [A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  *Id*. at 695.   Furthermore, "the law of this Circuit is that cumulative error claims are not cognizable on habeas [review] because the Supreme Court has not spoken on this issue."  *Cross v. Stovall*, 238 Fed. Appx. 32, 41 (6th Cir. 2007), (*quoting Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)).

-16-

### 3. **Analysis**

Stalnaker raises several issues in Ground One concerning his denial of effective assistance of counsel.  First, he argues that an "avalanche" of prior bad acts evidence adduced at trial denied him a fair trial.  Specifically, his attorney allowed testimony to be introduced involving his romantic relationships with other minor girls, which he alleges portrayed him to be a sexual predator.  Stalnaker also argues that counsel was ineffective in that he did not object to testimony from Petitioner's ex-wife that he smoked marijuana with minors and he had permitted his thirteen year old son to sleep with an adolescent female.  Defense counsel also permitted testimony that he provided alcohol and cigarettes to minors.  Lastly, Stalnaker argues that these cumulative errors denied him a fundamentally fair trial.

The state appellate court considered all the testimony and concluded that defense counsel's conduct involved trial strategy – that is, "to establish the victim as an imaginative twelve-year-old who was jealous of Stalnaker's relationship with a classmate which motivated the victim to fabricate the sexual encounters."  (Resp. Exh. 1 at ¶ 52.)  Furthermore, the court considered the substantial amount of evidence which demonstrated "an on-going sexual relationship" between Stalnaker and the victim and concluded that any error by defense counsel in failing to object to certain testimony was not prejudicial to Stalnaker.  (*Id*. at ¶ 62.)

Stalnaker is unable to demonstrate prejudice as to the admittance of prior bad act evidence or as to the failure of defense counsel to make appropriate objections.  *See Strickland* at 695.  There was overwhelming evidence of Stalnaker's guilt, including, the transcript of the controlled call made to him with the consent of the victim which corroborated the victim's allegations, the countless instant messages and phone calls between Stalnaker and the victim, and the physical

-17-

evidence of sexual abuse.

Lastly, Stalnaker argues that the state appellate court did not consider the cumulative impact of counsel's alleged errors.  He argues that the cumulative effect of the errors deprived him of his constitutional right to a fair trial.  *See Mackey v. Russell*, 148 Fed. Appx. 355; 2005 U.S. App. Lexis 16933, Case No. 02-4237 (6th Cir. 2005) (unpublished); *Blackburn v. Foltz*, 828 F.2d 1177, 1186 (6th Cir. 1987).  In *Mackey*, the defendant was convicted of a murder to which there were no witnesses and no physical evidence.  The defense counsel allowed into evidence prior bad acts of defendant.  The Sixth Circuit concluded that the state appeals court failed to consider the cumulative effect that the petitioner's attorney's errors might have prejudiced the jury's verdict, "given the paucity of evidence as to who drew his gun first."  *Mackey* at 358.  In *Blackburn*, the defendant was convicted of three counts of armed robbery in a second trial.  The first trial ended in a mistrial when the jury was deadlocked.  The *Blackburn* Court concluded that there was not overwhelming evidence against the defendant, which is supported by the first trial ending in a jury deadlock.  *Blackburn* at 1186.

*Mackey* and *Blackburn* are distinguishable from the case at bar because of the amount of evidence that was before the jury.  In the instant case, there was a substantial amount of evidence to convict Stalnaker on each of the offenses, much of it coming from Stalnaker himself.  The state court of appeals concluded that there was sufficient evidence as to each offense.

Moreover, there is some question whether cumulative error claims are cognizable on habeas review.  The Sixth Circuit has held that they are not cognizable since the U.S. Supreme Court has not addressed this issue.  *See Cross v. Stovall*, 238 F. Appx. 32, 41 (6th Cir. 2007), (*quoting Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006)).  In *Moore v. Parker*, 425 F.3d 250, 256

-18-

(6th Cir. 2005), the Sixth Circuit upheld prior rulings that constitutional errors which would not individually be sufficient, cannot be cumulated to support habeas relief. *See Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) (death-penalty decision stating, "The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.")

Further, *Mackey* was an unpublished opinion. In *Moore*, the petitioner cited to unpublished decisions which stated, in dicta, that the court may consider cumulative error. *Moore*, 425 F.3d at 256 (citing *Davis v. Burt*, 100 F3d. Appx. 340, 351 n.1 (6th Cir 2004); *Eskridge v. Konteh*, 88 Fed. Appx. 831, 836 n1 (6th Cir. 2004)). The *Moore* Court, in a footnote, stated that these unpublished cases directly contradicted binding precedent in *Lorraine* and expressly repudiated them.

Therefore, Stalnaker's cumulative error issue is not cognizable in habeas relief. Nonetheless, even if cumulative errors could be considered, Stalnaker's claim fails after considering the totality of the evidence before the jury.

For the above-stated reasons, Stalnaker has not demonstrated that counsel's performance was deficient or that he was prejudiced to such a degree that it "caused the defendant to lose what he otherwise would probably have won" or that it was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *See United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992.) The state appellate court's application of *Strickland* was neither contrary to nor an unreasonable application of federal law. Consequently, Stalnaker's ineffective assistance of counsel claim is without merit.

## C. Ground Two, Subclaim One – Minimum Sentences

-19-

Ground Two, subclaim one is premised on *Blakely*, in that Stalnaker claims his sentence could not lawfully have exceeded the statutory minimum without improper judicial fact finding.

Respondent argues that Stalnaker has waived this *Blakely* claim as it was not fairly presented to the state court and that *res judicata* would now preclude further state review. Stalnaker contends that his Notice of Certified Conflict in the Ohio Supreme Court[3] exhausted this issue, as the conflict brought the entire case before the Ohio Supreme Court.  *Twin City Fire Insurance Co. v. Adkins*, 400 F.3d 293, 300 (6th Cir. 2005.)(*citing Brown v. Borchers Ford, Inc.*, 50 Ohio St.2d 38 (1977)) ("[c]ertification of the record of the case to the Supreme Court, because of a conflict between judgments of the Courts of Appeals upon any question, brings the entire case, not merely the certified question, before th[e] court for review.")

In Stalnaker's motion to certify conflict he requested the state court of appeals to consider both issues of his minimum and consecutive sentences.  The court certified only the issue of minimum sentences.  Stalnaker presented the *Blakely* issue as to the presumptive minimum sentences under O.R.C. § 2929.14(B) to the Ohio Supreme Court through the Notice of Certified Conflict.  Therefore, Stalnaker presented the case in a full round to the state court explicitly as to his *Blakely* claim regarding his minimum sentences and, perhaps, implicitly as to his consecutive sentences as well.  *See Twin City Fire Insurance Co.*, 400 F.3d at 300.

### 1.  Merits - Minimum Sentences

Stalnaker argues that his "non-minimum" sentences violated his constitutional right to a

---

[3](Resp. Exh. 27.)

jury trial as guaranteed under the Sixth and Fourteenth Amendments, as held in *Blakely*.

Respondent concedes that *Blakely* applies to Stalnaker since his sentencing was not final at the time *Blakely* was decided. However, Respondent argues that *Blakely* is not violated here as the sentence imposed was within the statutory range for each offense. Moreover, he argues that the harmless error rule applies. Therefore, since Stalnaker could receive the same sentence upon remand, he has demonstrated no prejudice and his claims are without merit.

### 2. State Court Analysis

The state appellate court analyzed *Blakely* and concluded that it did not apply to the sentencing factors of O.R.C. § 2929.14(B):

> Here, appellant was convicted of rape under R.C. 2907.02(A)(1)(b), a first degree felony, and gross-sexual imposition under R.C. 2095.05(A)(4), a third degree felony. The minimum statutory prison-term for a first degree felony is three years, while the maximum prison-term is ten years. Furthermore, the minimum prison-term for a third degree felony is one year, while the maximum prison-term is five years. The trial court imposed an eight-year prison term on each of appellant's rape convictions and a three-year prison term on each of appellant's gross-sexual imposition convictions.

> * * *

> This court has previously not applied the holding of *Blakely* to the sentencing factors of R.C. 2929.14(B). In doing so, we have concluded that the *Blakely* holding does not render the trial court's findings with respect to these factors constitutionally infirm. *See, e.g., State v. Fiedler*, (sic) 11th Dist. No. 2003-L-190, 2005 Ohio 3388; *State v. Semala*, 11th Dist. No. 2003-L-128, 2005 Ohio 2653; *State v. Morales*, 11th Dist. No. 2003-L-025, 2004 Ohio 7239. The *Fielder* court provided the following explanation:

> 'In *State v. Morales* . . . we concluded that, under *Blakely*, the Sixth Amendment right to a jury trial had no application so long as the trial judge was imposing a sentence within the general range of terms permissible based upon the jury verdict. The *Morales* court then held that the factors set forth in R.C. 2929.14(B) were similar in nature to aggravating circumstances because a trial court's finding concerning the existence of one of the two factors in a particular case only meant that a longer term within the acceptable range could be imposed.. . .'

The clear precedent of this court establishes that the trial court's use of the sentencing

factors under R.C. 2929.14(B) did not constitutionally invalidate appellant's sentence. Instead, when the trial court made the findings under R.C. 2929.14(B) that the imposition of the shortest prison term for the offenses would demean the seriousness of appellant's conduct and would not adequately protect the public from future crimes, it had the statutory authority to impose sentences which were longer than the statutory minimum.

(Resp. Exh. 1, ¶¶ 108, 115 - 117.)

### 3.  Federal Standard

In *Blakely*, the United States Supreme Court applied the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"), and the *Blakely* Court held that:

> [T]he "statutory maximum" . . . is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant* . . . .  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.  When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," *Bishop, supra* § 87, at 55, and the judge exceeds his proper authority.

*Blakely, supra*, 542 U.S. at 303-304 (emphasis in original)(citations omitted)

On February 27, 2006, the Ohio Supreme Court decided *State v. Foster*, 109 Ohio St.3d 1 (2006) which struck down ORC §§ 2929.14(B) and (E)(4) as unconstitutional under *Blakely* because the statute required a court to make judicial findings, not proven to a jury beyond a reasonable doubt or admitted by the defendant, before the imposition of certain sentences. *Foster*, 109 Ohio St.3d at 26 (2006).  The Ohio Supreme Court severed O.R.C. §§ 2929.14(B) and (E)(4), allowing trial courts full discretion to impose a prison sentence within the statutory range and no longer requiring findings or reasons for imposing consecutive sentences or those beyond the statutory minimum.  *Id.* at 31.  The *Foster* Court held that its ruling must be applied

-22-

to all cases on direct review or not yet final.  *Id*.  Stalnaker's case was pending before the Ohio

Supreme Court in the Notice to Certify Conflict at the time *Foster* was decided.

### 4.  Analysis - O.R.C. § 2929.14(B) – Presumptive Minimum

Stalnaker argues that at the time of his sentencing, O.R.C. § 2929.14(B) provided, in

pertinent part, "the Court shall impose the shortest prison term authorized for the offense

pursuant to division (A) of this section" unless: "(1) the offender was serving a prison term, or

had previously served a prison term, or (2) the court finds on the record that the shortest prison

term will demean the seriousness of the offender's conduct or will not adequately protect the

public from future crime by the offender or others."

Stalnaker contends that the judge made judicial findings that were not admitted by

Petitioner nor made by the jury based on proof beyond a reasonable doubt.  He argues that based

on the provisions in effect at the time of his sentencing, he should have received "at the most an

aggregate prison sentence of four years – as opposed to the thirty-three year prison sentence that

was imposed."  Therefore, he argues that it clearly was not harmless error.

Respondent argues that Stalnaker was sentenced within the basic statutory range applicable

to each of the seventeen counts of which he was convicted.  Because the sentences were within

the range and Stalnaker shows no resulting prejudice, the error was harmless.  *See Washington v.*

*Recuenco*, 548 U.S. 212 (2006) (failure to submit a sentencing factor to the jury pursuant to

*Blakely* is not a "structural" error requiring automatic reversal, therefore harmless error may be

applied to the claimed sentencing error.)

"Even when the Court finds that a habeas claim succeeds on the merits, habeas relief is not

appropriate unless the constitutional error actually harmed the petitioner."  *Cooper v. Hudson*,

2008 WL 2001282, Case No. 3:07CV610, *6 (N.D. Ohio May 5, 2008).  In the Sixth Circuit,

"[a]n error may be harmless only where the government is able to prove that none of the

defendant's substantial rights have been affected by the error."  *United States v. Oliver*, 397 F.3d

369, 381 (6th Cir. 2005) (*citing* Fed.R.Crim.P. 52(a)).  "Under the harmless error test, a remand

for an error at sentencing is required unless" the Court is "certain that any such error was

harmless–i.e. any such error 'did not affect the [trial court's] selection of the sentence imposed.'"

*United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (*quoting Williams*, 503 U.S. at

203.)  If a petitioner could receive a lesser sentence absent unconstitutional fact-finding, the

*Blakely* violation is not harmless error.  *See Smith v.  Petkovich*, 2008 U.S. Dist. Lexis 39283,

Case No. 1:06CV00467, *26 (N.D. Ohio May 12, 2008) (Wells, J.)

> Here, the trial court made the following findings at Stalnaker's sentencing:
>
> I find the following factors make these offenses more serious: I find that the injury was exacerbated by the mental condition and age of the victim.  By that I mean that I find that this child was impressionable, manipulable and subject to brainwashing.  I find that the victim suffered serious psychological harm.  The fact that the child is in weekly counseling. I find that she suffered physical harm, which was noted in the emergency room.  I find that the family has suffered economic harm.  The economic harm to date being $4,675 in expenses for private schooling, child care, lost wages and the bulk for counseling to date.
>
> * * *
>
> I find that the number of victims goes far beyond the convictions in this case, as is readily apparent to any clear thinking person who has watched this trial and this hearing.  B.K. is every bit as much, in fact, even more a victim of this defendant than A.Z [the victim].  All of the children that came in here and lied for the defendant are victims in this case.  The parents of these children are victims in this case.  The schools where these children go are victims in this case.  Our society has been victimized in this case.  This defendant was convicted of victimizing society.  This was committed against the peace and dignity of the State of Ohio and his conduct has far reaching implications and these crimes are more serious than – and I hate saying this – than the normal rape case.
>
> * * *

-24-

> I find no genuine remorse, and that is an understatement.  This defendant has denied that any of this has occurred.  He still denies it. * * *
>
> I understand that you may deny it because an appeal is inevitable; however, I still consider that an indication of no remorse whatsoever. . . . [A] whole bunch of children were called into court and these kids lied to cover for you.  There are convictions and there are findings that I can make and then there are also some things that I don't know about from firsthand evidence, but I do know that something is afoot here.  Complaints of, you know, two ten-year-old girls in Florida, Pamela, Ashley.  You've got all of these children swarming around you for your love and affection and you thrive on that, and I believe that that is what makes recidivism, among all the many other factors, that helps indicate to me that recidivism in your person is more likely.

(Resp. Exh. 43, Sentencing Tr. 1768-71.)  The trial court made several judicial findings of fact that were not submitted to and found by the jury.  First, the trial court stated that the victim suffered serious psychological harm and that the family suffered economic harm.  Moreover, the trial court found that there were other victims in the case, such as another adolescent, "B.K.," the other children that testified at trial, the parents of these children, and society.  (*Id.*)  The jury did not make these findings.  It is unclear what impact these findings had on the severity of the sentences imposed on Stalnaker.

Furthermore, the trial court also found that Stalnaker showed no remorse for his crime.  This finding of a lack of remorse also amounts to impermissible judicial fact-finding.  *See Perry v. Money*, 2007 U.S. Dist. LEXIS 55342 AT *32 (N.D. Ohio July 31, 2007) (Zouhary, J.) (finding that while the consideration of a petitioner's prior prison terms did not violate *Blakely*, the trial court's impermissible finding that the petitioner showed no remorse did constitute impermissible fact-finding).  The trial court's findings – that Stalnaker committed "crimes . . . more serious than . . . the normal rape case" and posed the greatest likelihood of committing future crimes, required to exceed the minimum sentence, were either themselves impermissible

-25-

judicial findings or were based upon impermissible findings, thereby violating Stalnaker's right to a jury trial under the Sixth Amendment as set out in the *Blakely* decision. The state appellate court analysis finding otherwise was an objectively unreasonable application of federal law to the facts.

As to the harmless error argument, the Court is unable to conclude that remand would automatically result in the same sentence being imposed. Consequently, Respondent's harmless error objection must be rejected. A sentencing error is not harmless if a petitioner could receive a lesser sentence absent unconstitutional judicial fact-finding. *See Cvijetinovic v. Eberlin*, 2008 WL 918576, Case No. 04CV2555, *23 (N.D. Ohio Mar. 31, 2008) (O'Malley, J.); *Davis v. Eberlin*, 2008 WL 618968, Case No. 5:06CV398, *9 (N.D. Ohio Mar. 3, 2008) (Lioi, J.); *Jordan v. Timmerman-Cooper*, 2007 U.S. Dist. LEXIS 67052, *29, 2007 WL 2688248, *11 (S.D. Ohio Sept. 11, 2007) (Kemp, Mag. J.); *Perry*, 2007 U.S. Dist. LEXIS 55342, *35-*36, 2007 WL 2236634, *13; *Villagarcia v. Warden*, 2007 U.S. Dist. LEXIS 23796, *18, 2007 WL 1028528 (Mar. 30, 2007) (Frost, J.). The fact that Stalnaker may be re-sentenced under the current post-*Foster* Ohio sentencing scheme does not alter that conclusion.[4]

---

[4]    As Judge Polster stated in *Cooper v. Hudson*, 2008 WL 2001282, Case No. 3:07CV610, *9 (N.D. Ohio, May 5, 2008):  "The Court notes that this is another of those situations where a habeas petitioner should be careful what he . . . wishes for; after *Foster*, the state trial court could conceivably sentence [petitioner] up to the statutory maximum aggregate prison term, . . . without needing to articulate specific findings to justify the large enhancement from the aggregate statutory minimum . . . .  This observation should be construed as nothing more than the Court's observation of the high end of a possible sentence for [petitioner] after *Foster*; it should not be taken as the Court's own view or suggestion on [petitioner's] eventual sentence.  Just as the Court cannot presume there was no prejudice to [petitioner] because of the *Blakely* error– as the state trial judge might sentence [petitioner] to less than [current sentence]– so too might the trial judge give a higher sentence on remand."  *Id.*

Based on the above analysis, the undersigned recommends that Stalnaker's petition for a writ of habeas corpus be conditionally granted as to his claim that he was improperly sentenced under *Blakely* pursuant to O.R.C. § 2929.14(B).

**D.  Ground Two, Subclaim 2 – Consecutive Sentence - O.R.C. § 2929.14(E)(4).**

Stalnaker's second *Blakely* claim deals with his consecutive sentences under O.R.C. § 2929.14(E)(4).  The state court of appeals did not certify this issue as a conflict to the Ohio Supreme Court, nor did Stalnaker include this claim in his Notice of Appeal.  As neither the conflict certified by the state court of appeals nor Stalnaker's assignments of errors in his notice of appeal to the Supreme Court of Ohio contained any reference to his consecutive sentences, this subclaim may not have been presented in a full round to the state court and arguably is procedurally defaulted.  On the other hand, under *Twin City,* 400 F.3d at 300*,* it can be argued that certifying the conflict to the Ohio Supreme Court brought the entire case, including Stalnaker's consecutive sentence issue, before the court for review.  Therefore, Stalnaker may have exhausted this claim.

It can also be argued that this portion of the claim is not cognizable on habeas review. Other federal courts in Ohio have concluded that *Apprendi, Blakely* and *Booker* have not been extended to apply to consecutive sentences.  *See Cvijetinovic v. Eberlin*, 2008 WL 918576, Case No. 04CV2555, *27 (N.D. Ohio Mar. 31, 2008) (O'Malley, J.)(*quoting Cobbin v. Hudson*, 2008 WL 552484, Case No. 1:05CV2809) (N.D. Ohio Feb. 26, 2008) (Polster, J.).

The Court, however, need not decide this issue.  Recommending that Stalnaker be resentenced under subclaim one renders it unnecessary to rule on subclaim two.

## V.  Request to Expand the Record

Petitioner requests leave to expand the record in order to present expert opinion that he was denied effective assistance of counsel.  In his petition, he attaches an affidavit of an attorney stating that he will be able to demonstrate that, based on the totality of the evidence, his trial counsel was unprepared to try the case.  As Stalnaker's first ground for relief is denied, this request to expand the record is denied.

## VI.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Stalnaker's Petition be denied as to Ground One but be conditionally granted as to Ground Two on the *Blakely* claim that he was improperly sentenced to  "non-minimum" prison terms.  Consequently, the undersigned recommends that petitioner's sentence be vacated, and that his release be ordered unless the State of Ohio resentences him within ninety (90) days from the time the Court's decision becomes final.

s/ Greg White
U.S. MAGISTRATE JUDGE

Date:  September 24, 2008

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**